**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS P. JASIN,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 1:04-cv-2188** |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DENNIS KOZLOWSKI and MARK** | : | |
| **SWARTZ,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently pending before the Court are two motions.  First, Defendants move for

reconsideration of this Court's order granting in part and denying in part Defendants' motion for

summary judgment.  (Doc. No. 169.)  Second, Defendants move for summary judgment on the

ground that the judgment reduction rule would reduce any potential recovery in this matter to $0,

thus vitiating the need for trial.  (Doc. No. 188.)  For the reasons stated more fully herein, the

Court will grant Defendants' motion for reconsideration.

**I.     PROCEDURAL HISTORY[1]**

Plaintiff, pro se, filed a writ of summons in the Court of Common Pleas of Dauphin

County, Pennsylvania, against Defendants Tyco International, Dennis Kozlowski, Mark Swartz,

and Juergen Gromer on July 23, 2004.  (Doc. No. 1-9.)  The complaint was filed September 2,

2004.  (Id.)  Shortly after Defendants removed the case to federal court, the case was transferred

to the District of New Hampshire to be adjudicated with other similar cases as part of

Multi-District Litigation.  (Doc. No. 9.)  After nearly four years of litigation, including

---

[1] The factual circumstances of the above-captioned matter is adequately set forth in this
Court's November 3, 2010 summary judgment order.  (Doc. No. 169.)  The Court incorporates
those facts by reference.

1

disposition of motions to dismiss, completion of discovery, and a class-wide settlement of which

Plaintiff Jasin opted out, the case was remanded to this Court.  (Doc. No. 13.)

Following unsuccessful attempts at settlement, the parties filed cross motions for

summary judgment.[2]  (Doc. Nos. 127, 154.)  The Court denied Plaintiff's motion for summary

judgment in full and granted Defendants' motion for summary judgment in part on November

17, 2010.  (Doc. No. 169.)  Defendants moved for reconsideration, in part, of the Court's order

on November 17, 2010.  (Doc. No. 169.)  While briefing on the motion for reconsideration was

ongoing, the parties agreed to proceed to mediation, and on December 9, 2010, Magistrate Judge

Smyser ordered the parties to appear for a settlement conference on January 20, 2011.  (Doc. No.

172.)  Magistrate Judge Smyser held discussions with the parties on January 20, 2011, January

28, 2011, and January 31, 2011.  (Doc. Nos. 173, 178, 179.)  During settlement discussions a

discovery dispute arose, which the Court resolved on March 14, 2011.  (Doc. No. 187.)

Defendants then filed a new motion for summary judgment on March 23, 2011.  (Doc. No. 188.)

Following briefing on Defendants' latest motion for summary judgment, on June 8, 2011,

the Court ordered the parties to submit status reports indicating whether continued settlement

discussions were warranted or if the Court should proceed to resolve the outstanding motions.

(Doc. No. 194.)  Plaintiff indicated that further settlement discussions may be warranted

provided that Defendants were willing to offer a "reasonable" settlement amount.  (Doc. No.

196.)  Defendants, however, advised the Court that it did not desire to engage in further

---

[2] Following the filing of Defendants' motion for summary judgment, Plaintiff settled his
claims against all Defendants with the exception of Defendants Kozlowski and Swartz.  (Doc.
No. 142.)  The Court will refer to those Defendants who are no longer parties to this action as
"Settling Defendants."

settlement discussions.  (Doc. No. 195.)  Accordingly, on June 17, 2011, the Court concluded

that further settlement talks are unlikely to be successful and that it would proceed to consider

the outstanding motions.  (Doc. No. 197.)  However, before resolving the motions, the Court

requested the parties provide additional briefing.  (Id.)  The supplemental briefs having been

submitted, both motions are now ripe for disposition.

## II.      MOTION FOR RECONSIDERATION

Defendants move for reconsideration of the portion of this Court's November 3, 2010

order, in which the Court relied on the expert report of Dr. Gregg Jarrell in finding that Plaintiff

had submitted evidence of loss causation and that accordingly summary judgment was not

warranted on that issue.  On reconsideration, there are two issues before the Court: (1) whether

the Court erred in considering Dr. Jarrell's report; and (2) assuming the Court did err in

considering Dr. Jarrell's report, whether the Court should have granted summary judgment on

Plaintiff's 10(b), 14(a), and 20(a) claims.  After reviewing the standard of review on motions for

reconsideration, the Court will consider these issues.

### A.      Standard of Review

A motion for reconsideration is a device of limited utility.  Its purpose is to correct

manifest errors of law or fact or to present newly discovered evidence.  Harsco Corp. v.

Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Accordingly, a party seeking reconsideration must

demonstrate at least one of the following grounds prior to the court altering, or amending, a

standing judgment: (1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available when the court entered judgment; or (3) the need to correct a

clear error of law or fact or to prevent manifest injustice.  Max's Seafood Café v. Quinteros, 176

F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d

1194, 1218 (3d Cir. 1995)).  A motion for reconsideration is appropriate in instances where the

court has "patently misunderstood a party, or has made a decision outside the adversarial issues

presented to the Court by the parties, or has made an error not of reasoning but of apprehension."

Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in

part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted).

It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that

were not presented to the court in the context of the matter previously decided.  Drysdale v.

Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001).  "Because federal courts have a strong

interest in the finality of judgments, motions for reconsideration should be granted sparingly."

Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation

omitted).

### B.      Whether the Court Erred in Considering Dr. Jarrell's Report

In Defendants' brief in support of their motion for summary judgment, Defendants

argued that Plaintiff could not identify any evidence of loss causation.  (Doc. No. 128 at 8, 11-

12).  Likewise in their statement of undisputed material facts, Defendants stated that "Plaintiff

has not identified any expert witnesses or served any expert reports in this action."  (Doc. No.

129 ¶ 50.)  Defendants went on to note that the deadline for submitting such reports was

December 21, 2007.  (Id. ¶ 51.)  Plaintiff responded with a brief in opposition to which he

attached exhibits totaling 2,884 pages. (Doc. No. 154.)  In addition, the brief itself referred,

albeit obliquely, to the attached exhibits as evidence supporting a finding of loss causation.  (Id.

at 4-5.)  Notably, however, in his brief in opposition Plaintiff did not: (1) specifically identify Dr.

4

Jarrell's report beyond noting the existence of Exhibits C through G; (2) dispute Defendants'

contention that no expert reports were submitted during discovery; or (3) make any arguments

relying on Dr. Jarrell's expert report.  In their reply, Defendants once again reiterated their

position that Plaintiff had "failed to proffer any evidence to satisfy the 'loss causation' element

of his claims for securities fraud, common law fraud[,] and misrepresentation."  (Doc. No. 160 at

2-4.)

        In considering Defendants' motion for summary judgment, the Court reviewed the

voluminous exhibits attached to Plaintiff's brief in opposition to Defendants' motion for

summary judgment.  After reviewing the standard for establishing loss causation at the summary

judgment stage, the Court concluded that it would consider the exhibits attached to Plaintiff's

brief because Defendants did not object to them.  (Doc. No. 168 at 13-14.)  The Court then

acknowledged that the expert report of Dr. Jarrell was material to the issue of loss causation and

was sufficient to create a question of material fact regarding whether Plaintiff could satisfy his

burden on the question of loss causation at trial.  (Id.)

        In its motion for reconsideration, Defendants contend the Court erred in considering Dr.

Jarrell's report.  (Doc. No. 169.)  The Court agrees.  The report, attached as Exhibit E to

Plaintiff's brief in opposition to Defendants' motion for summary judgment, was prepared by Dr.

Jarrell for the State of New Jersey, Department of Treasury, Division of Investments for the case

of State of New Jersey v. Tyco International, No. 03-1337-B (D.N.H.).  (Doc. No. 153-6.)  The

report does not contain any reference to the Plaintiff in this action or to this case generally.  (Id.)

Although Defendants did not object to the Court's consideration of this evidence, the

Defendants' failure is excusable.  Defendants repeatedly argued in their brief in support of

summary judgment, brief in reply, and statement of material facts that Plaintiff did not produce

evidence of loss causation.  (Doc. No. 128 at 12; Doc. No. 129 ¶¶ 50-51; Doc. No. 160 at 2.)

Further, Plaintiff's brief in opposition fails to make any direct reference to Dr. Jarrell or the

content of Dr. Jarrell's report.  In light of Plaintiff's submission of nearly 3,000 pages of

exhibits, Plaintiff's failure to directly reference Dr. Jarrell's report, and Defendants' consistent

position that Plaintiff could not produce evidence of loss causation, the Court concludes that

Defendants did not waive their objection to Dr. Jarrell's report.

Because Defendants' objection is preserved the Court will consider whether the report

must be excluded. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires a party to

provide certain discovery to "disclose to the other parties the identity of any witnesses it may use

at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P.

26(a)(2).  The disclosure of an expert report must be made at the time set in a court order.  Fed.

R. Civ. P. 26(a)(2)(D).  Where a party fails to provide information as required by Rule 26(a), the

party is not allowed to use that information at trial "unless the failure was substantially justified

or is harmless." Fed. R. Civ. P. 37(c)(1).  The  party seeking to have evidence admitted bears the

burden of proving substantial justification or harmlessness. Tolerico v. Home Depot, 205 F.R.D.

169, 175 (M.D. Pa. 2002).

Pursuant to the expert discovery deadlines set forth by the Honorable Paul Barbardoro,

Plaintiff was required to serve all expert reports on or before December 21, 2007.  (Doc. No. 77

¶ 1.)  It is undisputed that Plaintiff had not disclosed an expert report at the time of Defendants'

November 2, 2009 summary judgment motion.  (Doc. No. 129 ¶¶ 50-51.)  Moreover, although

Plaintiff has indicated that Dr. Jarrell would be available for trial (Doc. No. 171), there is no

indication that Dr. Jarrell has actually been retained as Plaintiff's expert or that Dr. Jarrell has prepared a report for Plaintiff.  Moreover, Plaintiff has not moved for an extension of time for disclosure of his expert witness report.

Because Plaintiff did not comply with the expert disclosure deadline, the Court must consider whether Plaintiff's failure was harmless or substantially justified.  In considering whether to exclude evidence, the Third Circuit has directed that the following four factors be taken into consideration: "(1) the prejudice or surprise in fact to the opposing party, (2) the ability of the party to cure the prejudice, (3) the extent of disruption of the orderly and efficient trial of the case, and (4) the bad faith or willfulness of the non-compliance."  Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 423 (3d Cir. 2006) (citations omitted).  The prejudice to Defendants is obvious.  Expert discovery in this matter has been closed for nearly four years.  Defendants moved for summary judgment in large part on the understanding that Plaintiff failed to retain an expert.  (Doc. No. 127.)  Plaintiff has still failed to produce a report concerning his trades.  Defendants represent that because Plaintiff has not produced an expert report they have not retained an expert to rebut Dr. Jarrell's report.  (Doc. No. 198.)  Any attempt to cure this deficiency by reopening discovery to permit expert reports, rebuttal expert reports, and any Daubert challenges to those reports, would only further disrupt a process that has dragged on for the better part of a decade and is now near its conclusion.  As one district court has said, "In every trial there comes a time when discovery must be closed for the issues to be resolved . . . . In the case at bar, that time has long since passed."  Stambler v. RSA Sec., Inc., 212 F.R.D. 470, 472 (D. Del. 2003).  Accordingly, the Court must conclude that it erred in considering Dr. Jarrell's expert report in its initial order on summary judgment.

**C.     Reconsideration of Summary Judgment in Light of Exclusion of Dr. Jarrell's Report**

Having concluded that consideration of Dr. Jarrell's expert report was in error, the Court

will now consider whether Plaintiff is able to survive summary judgment in the absence of the

expert report.  In its November 3, 2010 order, the Court addressed the issue of loss causation

explaining:

> [B]oth section 14(a) and section 10(b) require proof of loss causation
> – economic injury caused by a defendant's misrepresentations. The
> Supreme Court has held that the causation element may not be
> satisfied simply by a plaintiff pleading and proving that he purchased
> stock at an artificially-inflated price. Dura Pharm., Inc. v. Broudo,
> 544 U.S. 336, 342 (2005) ("[A]n inflated purchase price will not
> itself constitute or proximately cause the relevant economic loss.").
> This is because, as the Court reasoned, "at the moment the
> transaction takes place, the plaintiff has suffered no loss." Id. Indeed,
> if the purchaser buys shares at an inflated price but also sells them
> "before the relevant truth begins to leak out, the misrepresentation
> will not have led to any loss." Id. Even if the purchaser purchased
> shares at an inflated price and sells them "after the truth makes its
> way into the marketplace, an initially inflated purchase price *might*
> mean a later loss," but does not necessarily indicate that the
> misrepresentation caused the loss. Id. at 342-43 (emphasis in
> original). Because a decreased price might simply be a reflection of
> changed economic circumstances, it is important for a plaintiff to
> provide causation evidence, usually through an expert opinion, to
> support the loss causation factor. See Sowell v. Butcher & Singer,
> Inc., 926 F.2d 289, 301 (3d Cir. 1991) ("As a general rule, plaintiffs
> alleging securities fraud rely on expert testimony to establish both the
> fact of damage and the appropriate method of calculation."); In re
> Williams Sec. litig.-WCG Subclass, 558 F.3d 1130, 1143 (10th Cir.
> 2009) (granting summary judgment for the defendants because the
> plaintiffs did not present expert or non-speculative evidence of loss
> causation).

(Doc. No. 168 at 12-13.)

The Court relied solely on Dr. Jarrell's report in concluding that Plaintiff had produced

evidence to satisfy this burden.  (Id. at 13-14.)  In the absence of Dr. Jarrell's report, Plaintiff is

8

unable to identify any evidence, expert or otherwise, sufficient to create a genuine issue of

material fact on the issue of whether the requisite causal link exists between the alleged

misconduct and Plaintiff's economic harm.  See 15 U.S.C. § 78u-4(b)(4); Dura Pharms., Inc. v.

Broudo, 544 U.S. 336, 338 (2005); Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 208 (3d

Cir. 2006); Novinger Grp., Inc. v. Hartford Ins., Inc., 514 F. Supp. 2d 662, 673 (M.D. Pa. 2007);

see also McCabe v. Ernst & Young, LLP, 494 F.3d 418, 425 (3d Cir. 2007) (noting that such

evidence is required to ensure that defendants do not become insurers against all risks associated

with an investment and observing that "[o]therwise, for example, a seller who fraudulently

induced a purchase of securities in early October 1987 would have become an insurer against the

precipitous price decline caused in large part by the market crash on October 19" (quoting 3

Thomas Lee Hazen, Treatise on the Law of Securities Regulation § 12.11[3] (5th ed. 2005));

Gordon Partners v. Blumenthal, 293 F. App'x. 815, 817 (2d Cir. 2008) ("A claimant also must

show that the decline in the market price was due to the fraud, as opposed to other market

factors, such as changed investor expectations, the actualization of the company's risks, or other

conditions that may account for some or all of the lower price.").

　　　　Where, as here, the party opposing a motion for summary judgment bears the ultimate

burden of proof on an issue at trial, the moving party discharges its burden by "pointing out" to

the court that there is an absence of evidence supporting the nonmoving party's claim.

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).  The non-moving

party then must identify evidence of record that creates a genuine issue of material fact if it is to

survive summary judgment.  Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).  Plaintiff

has failed to identify any evidence, other than the inadmissible expert report of Dr. Jarrell, to

establish that Defendants' wrongdoing was more than "present at the scene" of Plaintiff's

economic loss.  Oscar Private Equity Invs. v. Allegiance Telecom, Inc., 487 F.3d 261, 271 (5th

Cir. 2007).  In the absence of such evidence the Court must conclude that Plaintiff is unable to

establish loss causation required to prove a claim under sections 14(a) and 10(b).  Further,

because Plaintiff is unable to establish a predicate violation under the Securities and Exchange

Act of 1934, granting Defendants' motion for summary judgment on his 20(a) claims against

Defendants is required.  Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 159 n.21 (3d

Cir. 2004.)  Accordingly, upon reconsideration, Defendants' motion for summary judgment

(Doc. No. 127) must be granted in full.

## III.   SUMMARY JUDGMENT BASED ON THE JUDGMENT REDUCTION RULE[3]

In addition to Defendants' motion for reconsideration, Defendants filed an independent

motion for summary judgment based on the judgment reduction rule set forth in the Private

Securities Litigation Reform Act, 15 U.S.C. § 78u-4(f)(7)(B).[4]  (Doc. No. 188.)  Defendants

---

[3] The Court's resolution of the motion for reconsideration renders its discussion of the judgment reduction rule moot.  However, in the interest of completeness, the Court will consider Defendants' motion for summary judgment on the basis of the judgment reduction rule as if it had not ruled in Defendants' favor on the motion for reconsideration.

[4] Although some sections of the Private Securities Litigation Reform Act only apply to class actions, other provisions, apply to "any private action arising under this chapter" whether it is a class action or not.  See Greer v. Advanced Equities, Inc., No. 08-c-4958, 2009 U.S. Dist. Lexis 51751, at *27-*28 (N.D. Ill. June 19, 2009) (concluding 15 U.S.C. § 78u-4(b) is not limited to class actions because it did not appear in subsection (a) and by its terms applies to "any private action arising under this chapter").  Likewise, 15 U.S.C. § 78u-4(f)(7) applies to "any private action."  In addition to the textual support for this position, it would be intolerable to require enforcement of a bar order, issued pursuant to 15 U.S.C. § 78u-4(f)(7)(A), which prohibits Defendants from seeking contribution from the Settling Defendants for any judgment or damages arising from the present litigation (Doc. No. 142), and then not apply the judgment reduction rule in 15 U.S.C. § 78u-4(f)(7)(B).  Accordingly, the Court holds that the judgment reduction rule would apply in this matter.

contend that as a result of the Court's order on their initial motion for summary judgment,

Plaintiff's only remaining claims concern 2,200 shares of stock purchased after February 4,

2002, for a total cost of $77,000, and sold after April 25, 2002, for a total price of $42,520.

(Doc. No. 189 ¶¶ 2-4.)  Therefore, Plaintiff's maximum total damages is $34,480.[5]  Defendants

further note that Plaintiff settled its claims with the Settling Defendants for $145,000.  (Id.¶ 5.)

Defendants argue that because Plaintiff will be unable to establish damages exceeding $34,480 at

trial, his $145,000 settlement with the Settling Defendants will reduce any potential jury award

to $0.  (Id. ¶¶ 2-4.)

> The judgment reduction rule provides that:

>> If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of –

>> (i)     an amount that corresponds to the percentage of responsibility of that covered person; or

>> (ii)    the  amount  paid to the plaintiff by that covered person.

15 U.S.C. § 78u-4(f)(7)(B).  A "covered person" is defined as "a defendant in any private action

arising under [chapter 2B of title 15 of the United States Code]."  15 U.S.C. § 78u-4(f)(10)(C)(i).

Claims brought pursuant to Sections 10(b), 14(a), and 20(a) of the Securities and Exchange Act

are located in chapter 2B.  Therefore, the Settling Defendants are "covered persons."  The rule

provides for the reduction of a final judgment by the greater of the proportionate share rule or the

---

[5] As noted in footnote 3, supra, the Court's ruling on Defendants' motion for reconsideration eliminates any potential recovery.  However, assuming the Court did not grant the motion for reconsideration, $34,480 would represent Plaintiff's maximum recoverable damages.

pro tanto share rule.

As described in McDermott, Inc. v. Amclyde, 511 U.S. 202 (1994), the proportionate share approach limits liability to ensure that the non-settling party only pays damages equal to that party's percentage of fault. Id. at 210. On the other hand, the pro tanto approach works as a credit offsetting the amount of damages for which the non-settling defendant is liable. Id. at 208-09. For example, in a case with two defendants, if defendant A settles for $40,000, and at trial the jury returns a verdict of $100,000 and finds each defendant fifty percent at fault, under a proportionate share rule the non-settling defendant will be liable for $50,000. However, if the pro tanto approach were used, the non-settling defendant would be liable for $60,000, that is, $100,000 less the amount previously paid by the settling defendant. In the present case, even if a jury determined that Plaintiff was entitled his maximum potential recovery of $34,480 and further determined that these Defendants were one hundred percent responsible for Plaintiff's losses, the pro tanto rule would reduce the $34,480 award by the $145,000 settlement, thus completely offsetting Plaintiff's damages award.

Accordingly, any trial in this matter could have but one possible result: Plaintiff would be awarded $0 in damages. Trial would, therefore, serve no purpose other than providing Plaintiff with a moral victory. Because there are no material factual disputes, that is a dispute that "might affect the outcome of the suit under governing law," Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), summary judgment would be warranted on this basis as well.

## IV.   CONCLUSION

Upon consideration of Defendants' motion for reconsideration and motion for summary judgment, the Court concludes that either motion provides sufficient grounds for entering

judgment in favor of Defendants.  Regarding the motion for reconsideration, the Court committed an error of fact in considering Dr. Jarrell's report, which was submitted on behalf of a plaintiff in a different case.  Because Dr. Jarrell's report was the only competent evidence presented by Plaintiff to establish loss causation, Plaintiff is unable to establish violations of sections 10(b) or 14(a).  Because Plaintiff cannot establish a predicate violation, summary judgment on Plaintiff's 20(a) claim must also follow.  Finally, even if the Court did not grant Defendants' motion for reconsideration, the Court finds that the judgment reduction rule would necessarily reduce any potential damages award Plaintiff could win to $0.  Therefore, there would be no issues for resolution at trial, and summary judgment would be warranted on this basis as well.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS P. JASIN,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 1:04-cv-2188** |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **DENNIS KOZLOWSKI and MARK** | : | |
| **SWARTZ,** | : | |
| **Defendants** | : | |

## ORDER

**NOW**, on this 16TH day of August 2011, **IT IS HEREBY ORDERED THAT**

Defendants' motion for reconsideration (Doc. No. 169) is **GRANTED** and judgment shall be

entered in favor of Defendants.  Defendants' motion for summary judgment (Doc. No. 188) is

**MOOT**.  The clerk of court is directed to close the case.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

14